PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALLACCESS LAW GROUP
irakli@allaccesslawgroup.com
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142

Attorneys for Plaintiff
DOUGLAS WINSTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS WINSTON,<br><br>         Plaintiff,<br><br>    v.<br><br>WBP LEASING LLC; THE GEO GROUP, INC.<br><br><br>         Defendants. | CASE NO.<br><u>Civil Rights</u><br><br>COMPLAINT FOR DAMAGES:<br><br>1)  Violation of the Federal Fair Housing Act (42 U.S.C. § 3601 *et seq.*)<br><br>2)   Violation of the California Fair Employment and Housing Act (Gov't Code § 12926 *et seq.*)<br><br>3)  Violation of the California Disabled Persons Act (Civil Code § 54 *et seq.*)<br><br>4)  Violation of the California Unruh Act (Civil Code § 51(b))<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff DOUGLAS WINSTON complains of Defendants WBP LEASING LLC and

THE GEO GROUP, INC. and alleges as follows:

1.      **INTRODUCTION:**  Plaintiff DOUGLAS WINSTON is a "person with a

1

1  disability" or "physically handicapped person" who requires the use of a wheelchair or other

2  assistive devises for mobility and cannot use facilities which are inaccessible to mobility disabled

3  persons, including those who require the use of a wheelchair. Defendants WBP LEASING LLC

4  and THE GEO GROUP, INC. ("Defendants"), the owners and operators of the apartment

5  building/transitional housing facility located at 111 Taylor Street, San Francisco, California,

6  ("Taylor Street Apartment") discriminated against Plaintiff on account of his disability in

7  violation of the Federal Fair Housing Act, 42 U.S.C. § 3601, et seq., and related state laws.

8      2.      On or about August 3, 2022, Plaintiff began residency at Taylor Street Apartments,

9  a facility designed for residential reentry, following his parole from incarceration. Upon his

10  arrival, Defendants were aware of Plaintiff's disability. In acknowledgment of his mobility needs,

11  Plaintiff was allocated a room on the fourth floor, where accommodations were tailored for

12  wheelchair access. The reentry program allowed Plaintiff to partake in external activities—such

13  as medical appointments, grocery shopping, employment training, and other community

14  engagements—subject to prior authorization from his case manager or Taylor Street Apartments

15  staff. Moreover, as a condition for residing at the facility and maintaining his parole status,

16  Plaintiff had to participate in designated activities and educational sessions located on the first

17  floor, which included weekly NA/AA meetings, computer literacy classes, and moral recognition

18  therapy sessions.

19      3.      For the initial month, Plaintiff maximized the liberties afforded by the residential

20  reentry program. He diligently attended all mandated classes, fulfilled his medical obligations,

21  and engaged with the community within the constraints of his permissions, adhering to all

22  prescribed regulations. However, on or about September 7, 2022, Plaintiff's autonomy was

23  abruptly curtailed. The elevator in Taylor Street Apartments, crucial for Plaintiff's mobility given

24  his residence on the fourth floor and reliance on a wheelchair, ceased to function without prior

25  warning. This malfunction stripped Plaintiff of his ability to exit the building independently,

26  profoundly impacting him especially considering his recent incarceration. The elevator's failure

27  also raised immediate concerns about accessing essential services, including meals, mandatory

28  classes, and medical appointments. These apprehensions proved justified as the elevator remained

out of service for an entire month, during which Defendants did not provide any form of accommodation to Plaintiff. This incident marked the onset of multiple prolonged elevator outages throughout Plaintiff's tenure at the apartments, exacerbating his challenges. Defendants' recurrent and unreasonable delays in restoring elevator service compelled Plaintiff to face a choice: endure significant physical pain and the risk of injury from using the stairs or face isolation within his own residence. Each scenario subjected Plaintiff to considerable distress and humiliation.

4.      Defendants exhibited a persistent failure to maintain the operational integrity of Taylor Street Apartments elevator, with it becoming inoperable on no fewer than six occasions during Plaintiff's residency, spanning from August 3, 2022, to January 31, 2024. The duration of these outages ranged from several days to a full month, significantly impeding Plaintiff's mobility and access to required services and activities and causing physical injuries.

5.      Plaintiff seeks damages for the injuries Plaintiff has suffered due to Defendants' discriminatory behavior and recovery of reasonable attorney fees, costs, and litigation expenses.

6.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331 for violations of the Fair Housing Act, 42 U.S.C. sections 3601 *et seq.*  This Court has jurisdiction over the pendent state-law claims brought under California law pursuant to 28 U.S.C. section 1367.

7.      **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is founded on the fact that the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

8.      **INTRADISTRICT:**  This case should be assigned to the San Francisco intradistrict as the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

9.      **PARTIES:**  Plaintiff DOUGLAS WINSTON is a disabled individual who relies on a wheelchair for mobility.  Plaintiff had his left leg amputated above the knee due to an infection. He also has a bone deformity in his right leg which makes it impossible to fully extend his right leg. He also has an injury to his intestines which requires the use of a colostomy bag.

1   Plaintiff is and at all relevant times was a "handicapped person" as defined by 42 U.S.C. section

2   3602, and a "person with a disability" as defined in 29 U.S.C. section 705(9)(B), California

3   Government Code section 12926, the Unruh Civil Rights Act, California Civil Code section 51,

4   the Disabled Persons Act, California Civil Code section 54.1, and Civil Code section 3345.

5         10.    Defendants WBP LEASING LLC and THE GEO GROUP, INC., are the legal

6   owners and operators of the apartment building known as Taylor Street Apartments located at 111

7   Taylor Street, San Francisco, California, and are responsible for providing and maintain the

8   elevator.  Taylor Street Apartments is a dwelling within the meaning of the Fair Housing Act, 42

9   U.S.C. § 3602(b), a housing accommodation under FEHA, Government Code § 12927(d), and the

10   Disabled Persons Act, Civil Code § 54.1(b)(2), and a business establishment under the Unruh

11   Act, Civil Code § 51.

12         11.    **FACTUAL STATEMENT:**  In August 2022 Plaintiff was released from prison at

13   the age of 69 after serving over a 45-year prison sentence.  As a requirement of his parole,

14   Plaintiff was required to reside in transitional housing. He was assigned to a room at the Taylor

15   Street Apartments by the California Department of Rehabilitation and Corrections (CDRC).  On

16   August 3, 2022, Plaintiff moved into the Taylor Street Apartment residential reentry facility after

17   being paroled from prison. Plaintiff was assigned to live in a room on the fourth floor of the

18   building. He was allowed to leave the reentry facility for medical appointments, grocery

19   shopping, employment training, and other community activities with prior approval from his case

20   worker or other employees at the Taylor Street Apartments.  Additionally, as a requirement of

21   living at the facility and maintaining his parole, Plaintiff attended certain activities and classes

22   offered on the first floor of the Taylor Street Apartments, including weekly NA/AA meetings,

23   weekly computer classes, and weekly moral recognition classes.

24         12.    For a little over a month, Plaintiff enjoyed the freedom of the residential reentry

25   facility to the fullest extent possible.  He attended his required weekly classes, went to necessary

26   medical appointments, and spent time outside in the surrounding community as he was permitted.

27   On or about September 7, 2022, however, things changed for Plaintiff.  Suddenly, without any

28   notice, the elevator at the Taylor Street Apartments stopped working.  Plaintiff lived on the fourth

floor of the Taylor Street Apartments, and since he is confined to a wheelchair, he relied on the elevator to move through and out of the building, and to attend his mandatory classes. Suddenly, Plaintiff had lost his freedom to leave the building, an extremely distressing prospect after having just been released from prison. Plaintiff also began to worry about missing meals in the cafeteria and how he would attend his required classes which were held on the first floor of the building and his necessary medical appointments.

13.     On September 9, 2022, Plaintiff went back to the elevator to see if it was working. This time he saw a sign on the elevator door which indicated that it was out of order. He spoke to the program supervisor, Mr. Gomez, who had an office near the elevator on the fourth floor of the Taylor Street Apartments. Plaintiff asked Mr. Gomez when the elevator would be fixed. Mr. Gomez assured Plaintiff that the elevator would be fixed "soon."

14.     On September 11, 2022, Plaintiff had to travel to the first floor of the Taylor Street Apartments to attend a moral recognition class, which is required as part of the reentry program. He attempted to use the elevator, but it was still broken. Plaintiff knew that he had to get downstairs to attend the class to not violate his parole, so he asked a friend to assist him to crawl down the four flights of stairs to the first floor. Plaintiff had to slide down the stairs on his bottom while his friend carried his wheelchair down the flight of stairs. At each landing, Plaintiff would get back into his wheelchair, and his friend would push him to the next flight of stairs, then Plaintiff would get out of his wheelchair and go down the next flight of stairs on his bottom. In this fashion, he made it down to the first floor of the building. The process was very risky for hygiene purposes since the jostling motion of crawling down the stairs threatened to disrupt the use of his colostomy bag and its connection to its port on his person.

15.     Mr. Gomez witnessed Plaintiff struggling to get down the stairs and offered to help, but Plaintiff told him he already had someone to help him. Plaintiff attended the required class, and then he had to go back up to the stairs fourth floor to return to his room. Climbing up the stairs was significantly more difficult for Plaintiff. At 69 years old, he had to climb up the stairs by placing his hands on the stair treads above him and hopping on his non-amputated leg to the step above, them moving his hands to the next tread and hopping up again. This was

exhausting for Plaintiff, and he had to take many breaks to get himself all the way back up to the fourth floor. Once he reached his room, Plaintiff's energy was depleted.

16.     On September 13, 2022, Plaintiff had to go downstairs again to attend the mandatory NA/AA and computer classes.  Again, Plaintiff went to the elevator to check to see if it was working.  It was not, and there was a sign indicating that the elevator was out of order.  He asked Mr. Gomez when the elevator would be fixed.  Mr. Gomez said that he did not know when it would be fixed.  Plaintiff was disappointed with this response, but he knew he needed to get to the first floor of the Taylor Street Apartments to attend his required meeting and class. Plaintiff again asked a friend for assistance in climbing up and down the four flights of stairs in the same manner that he had previously.  Again, it was exhausting for him.

17.     On September 16, 2022, Plaintiff had to leave the Taylor Street Apartments for a medical appointment.  He found that the elevator was still not working, so he again asked a friend to help him go down the stairs.  Plaintiff slowly made his way down the stairs and attended his medical appointment.  When Plaintiff returned from his medical appointment, he was particularly tired from his outing.  However, Plaintiff still had to hop up the stairs.  Unfortunately, while he was climbing up the stairs, Plaintiff injured his intestines which were protruding from his abdomen due to a medical issue.  This condition was substantially aggravated and worsened by having to traverse the stairs, causing his intestines to bulge further outside his body.  A few days after he had injured himself on the stairs, Plaintiff noticed that there was blood in his colostomy bag.  When he spoke with his medical providers about the issue, they explained that they believed Plaintiff had scratched his intestines while hopping up the stairs. Plaintiff continues to experience periodic bleeding from his intestines because of this injury.  He required surgery to fix the issue. Similarly on other occasions, his stump was injured from climbing the stairs as well, causing him at least one hospital visit.

18.     Plaintiff's relief when the elevator was finally fixed on October 7, 2022, was immense but short lived.  On October 24, 2022, Plaintiff went to use the elevator at Taylor Street Apartments to go down to the first floor, but there was a sign on the elevator indicating that it was broken once again.  Plaintiff again asked Mr. Gomez when the elevator would be fixed, but Mr.

1    Gomez indicated that he did not know.  This time the elevator at Taylor Street Apartments was

2    out of service for approximately a week.  During that time, Plaintiff still needed to go down to the

3    first floor to attend his mandatory NA/AA meeting, computer class, and morality recognition

4    class.  He had to climb down and then back up the stairs at least twice during this week.  The

5    other days during the elevator outage, Plaintiff had to make the difficult decision to stay in his

6    room rather than climb down the stairs.

7         19.    The elevator at the Taylor Street Apartments worked for about one month.  On

8    November 29, 2022, Plaintiff entered the elevator around 5:15 am to go down to the first floor for

9    breakfast.  The door to the elevator closed, and the elevator started to go down.  However, the

10   elevator stopped working between the fourth floor and the first floor.  Plaintiff was trapped in the

11   elevator.  He immediately called the control booth to inform them that the elevator had stopped

12   working.  The employee in the control booth told Plaintiff that he would inform one of the case

13   managers on duty at the time and disconnected the call. A case manager called Plaintiff and told

14   him that they were working on fixing the elevator and encouraged him to stay calm.  However,

15   being trapped in the elevator triggered Plaintiff, and he started panicking.  He called his sister and

16   a friend, both of whom tried to calm him down, but Plaintiff was in a state of extreme anxiety

17   while stuck in the elevator.  After about an hour of being stopped between floors, the elevator

18   finally started working again and Plaintiff managed to exit on the first floor.

19        20.    Plaintiff ate his breakfast, and then took the elevator back up to the fourth floor to

20   go to his room.  However, about 30 minutes after he had returned to his room, the fire alarm at the

21   Taylor Street Apartments went off.  Plaintiff was told that he needed to evacuate the building.  He

22   did not feel comfortable using the elevator to evacuate the building for fear that he would get

23   stuck in the elevator during an emergency.  Plaintiff called his friend to ask for assistance in

24   climbing down the stairs.  Although Plaintiff's friend had evacuated from the building, he went

25   back up to the fourth floor and helped Plaintiff climb down the stairs so that he could leave the

26   building safely. The employees of the Taylor Street Apartments did not offer Plaintiff assistance

27   in evacuating the building.

28        21.    On December 29, 2022, the elevator stopped working again.  It was out of order

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

for about one week.  During that time, Plaintiff had to climb up and down the stairs at least two times to attend classes and medical appointments.

22.     The same thing happened again starting on or about January 30, 2023, for at least a week.

23.     On April 6, 2023, for the first-time during Plaintiff's tenancy at the Taylor street apartments, a sign in the elevator read "Elevator Compliance letter is on file in facility administration office."  Before that, and since Plaintiff began living at the Taylor Street Apartments, maintenance and permits were not maintained for the elevator, and no such "compliance letter" or other permit existed, in violation of federal and state law. Between April 6, 2023, and April 19, 2023, Plaintiff asked Mr. Gomez to see a copy of the letter, but he never permitted Plaintiff to see it, stating that if he posted it in the elevator "guys would just tear it down."  On April 21, 2023, a letter was posted in the elevator dated February 16, 2021, that merely stated an application had been made for an elevator permit, not that one had been issued. It appeared that no permit had been issued in over two years, and no compliance letter existed.

24.     On August 12, 2023, the "compliance letter" of February 16, 2021, was removed. When Plaintiff asked Mr. Gomez why it was removed, he said it was because there were some "important people" coming for a "major inspection" of the facility.

25.     On September 28, 2023, there was a fire alarm sounding at 3:16 pm.  The elevator took 12 minutes to reach the fourth floor.  By the time the elevator reached the fourth floor, the alarm had stopped.

26.     On December 21, 2023, the elevator stopped working again.  It was out of order for about one week.  During that time, Plaintiff had to climb up and down the stairs several times during this period to get food and attend appointments.

27.     On December 25, 2023, Plaintiff could not go downstairs for breakfast, and no one offered to bring him any food despite Defendants' knowledge of Plaintiff's difficulty in traversing the stairs. Later that day, Plaintiff left Taylor Street Apartments with a day pass, and he had to ask a stranger to help him get up and down the stairs.  He took video footage of his struggle. Later that day, Mr. Gomez entered Plaintiff's room and told him that if he did not delete the videos

from his phone, he would report Plaintiff to the parole officials.  Mr. Gomez told Plaintiff that having the videos violated the "house rules," and he threatened to have Plaintiff permanently removed from the facility if he did not delete them.

28.     On December 26, 2023, Plaintiff had arranged for a day pass so that he could attend an appointment to discuss obtaining alternative housing, but he was informed by Defendants' employees that he was on "lockdown" and could not leave the facility.

29.     On January 31, 2024, Plaintiff moved out of the Taylor Street Apartments.

30.     Many of Defendants' employees who work at the Taylor Street Apartments witnessed Plaintiff's struggle in climbing up and down the stairs during the elevator outages.  It is obvious and known that Plaintiff is a disabled person who needs the use of a wheelchair for locomotion and cannot climb stairs.  Yet at no time did Defendants' employees or representatives offer Plaintiff any type of accommodation during the elevator outages at the Taylor Street Apartments.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT**
**(42 U.S.C. § 3601 *et seq.*)**

31.     Plaintiff replead and incorporate by reference, as if fully set forth again below, the factual allegations contained in Paragraphs 1 through 30, above, and incorporates them here by reference as if separately repleaded hereafter.

32.     Taylor Street Apartments is a "dwelling" available "to rent" within the meaning of the Fair Housing Act (FHA).  42 U.S.C.A. § 3602.  It is a "covered multi family dwelling" under section 3604 (f)(7)(A).

33.     Based on the above, Defendants have violated the protections afforded to Plaintiff under the FHA, including, but not limited to, the following:

        a.     Failing and refusing to make reasonable accommodations in policies, programs, and procedures when such is necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, including but not limited to providing an emergency evacuation plan in case of an elevator shutdown during said emergency;

9

           b.      Failing and refusing to provide an accessible path to and through the building and to common areas of the building; and

           c.      Failing to maintain the accessible features of their property, such as the elevator, providing ingress and egress to tenants with disabilities;

34.      Defendants had actual knowledge that Plaintiff is a person with a disability. Plaintiff affirmatively requested accommodations including that the elevator be fixed when it was broken. Defendants repeatedly refused or failed to respond to the requests for accommodations.

35.      Defendants maintain a pattern and practice of denying Plaintiff full and equal access to his dwelling by failure to maintain accessible paths or travel, and failure to respond appropriately to requests for accommodation. 42 U.S.C.A. § 3604(f)(3).

36.      For these reasons, Plaintiff is entitled to actual damages, punitive and exemplary damages relief as set forth below.

WHEREFORE, Plaintiff prays for damages as stated below.

## SECOND CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### (*Cal. Government Code § 12955 et seq.*)

37.      Plaintiffs re-plead and incorporate by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 36 of this Complaint and incorporates them here as if separately re-pleaded.

38.      The Fair Employment and Housing Act (FEHA) prohibits discrimination on the basis of disability in housing. Cal. Gov't Code § 12955 *et seq.*

39.      Taylor Street Apartments is a "housing accommodation" within the meaning of FEHA. Cal. Gov't Code § 12927.

40.      Based on the above, Defendants have violated the protections of FEHA as follows:

           a.      Failing and refusing to make reasonable accommodations in policies, programs, and procedures when such is necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, including but not limited to providing an emergency evacuation plan in case of an elevator shutdown during said emergency;

10

1           b.     Failing and refusing to provide an accessible path to and through the

2                  building and to common areas of the building; and

3           c.     Failing to maintain the accessible features of their property, such as the

4                  elevator, providing ingress and egress to tenants with disabilities.

5      41.     Based on the above, Plaintiff is entitled to actual damages, punitive and exemplary

6  damages as set forth below.

7           WHEREFORE, Plaintiff prays for damages as stated below.

8
**THIRD CAUSE OF ACTION:**
**VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT**
9                    **(Cal. Civ. Code § 54 *et seq*)**

10     42.     Plaintiff repleads and incorporate by reference, as if fully set forth again below, the

11  allegations contained in Paragraphs 1 through 41 of this Complaint and incorporates them here as

12  if separately re-pleaded.

13     43.     The Disabled Persons Act (DPA) requires, "Individuals with disabilities shall be

14  entitled to full and equal access, as other members of the general public, to all housing

15  accommodations offered for rent, lease, or compensation in this state, subject to the conditions

16  and limitations established by law, or state or federal regulation, and applicable alike to all

17  persons."  Civ.C. § 54.1(b)(1).

18     44.     The subject apartment building is a housing accommodation under Civil Code

19  section 54.1(b)(2).  Plaintiff is a person with a disability within the meaning of the DPA.

20     45.     For these reasons, Defendants have violated the DPA as follows:

21           a.     Denying Plaintiff full and equal access to his housing accommodations,

22                  (Cal Civ. Code § 54.1(b)(1));

23           b.     Failure and refusal to construct and/or alter the facilities in compliance

24                  with State building codes, and/or to maintain them in accessible condition;

25           c.     Refusing to "make reasonable accommodations in rules, policies, practices,

26                  or services, when those accommodations may be necessary to afford

27                  individuals with a disability equal opportunity to use and enjoy the

28                  premises."  (Cal. Civ. Code § 54.1(b)(3)(B)); and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

| | |
|---|---|
| 1 | d.   Failing to maintain the accessible features of their property, such as the |
| 2 | elevator, providing ingress and egress to tenants with disabilities. |
| 3 | 46.   Plaintiff has suffered actual damage as a result of such failures which they allege |
| 4 | stems from Defendants' knowing and intentional violation of their rights as a disabled person and |
| 5 | a person associated with a disabled person under California Law. |
| 6 | 47.   Based on the above, Plaintiff is entitled to statutory damages, actual damages, |
| 7 | punitive and exemplary damages as set forth below. |
| 8 | WHEREFORE, Plaintiff request relief as outlined below. |

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF UNRUH CIVIL RIGHT ACT**
**(Cal. Civ. Code § 51 *et seq.*)**

48.   Plaintiff repleads and incorporate by reference, as if fully set forth again below, the allegations contained in Paragraphs 1 through 47 of this Complaint and incorporates them here as if separately re-pleaded.

49.   At all times mentioned, the Unruh Civil Rights Act, California Civil Code 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

50.   The building is a business establishment and Plaintiff is a person with a disability within the meaning of the Unruh Act.

51.   Defendants violated the Unruh Act by its acts and omissions, including, but not limited to, the following:

a.   Failure and refusal to modify the policies and procedures as necessary to ensure Plaintiff full and equal access to the accommodations, advantages, facilities, privileges, or services;

b.   Failing to maintain the accessible features of their property, such as the elevator, providing ingress and egress to tenants with disabilities; and

c.   Failure and refusal to provide an accessible route to and through all areas of

12

1    the building which are required to be accessible and adaptable.

2    52.    Plaintiff is informed, believes and thereon alleges that Defendants' behavior, as

3    alleged here, was intentional: Defendants were aware or were made aware of their duties to

4    refrain from establishing discriminatory policies and barriers preventing physically disabled

5    persons from accessing its facilities, before this Complaint was filed.

6    53.    Defendants' refusal to provide Plaintiff with an accessible path of travel in

7    violation of the laws set forth above, demonstrates a knowing and conscious disregard for the law

8    in general and an intentional denial of rights of disabled tenants in particular.  Such conduct

9    justifies an award of treble, punitive and exemplary damages along with all other relief sought.

10    WHEREFORE, Plaintiff requests relief as outlined below.

11    **<u>PRAYER</u>**

12    Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this

13    Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the

14    unlawful acts, omissions, policies, and practices of the Defendants as alleged here, unless Plaintiff

15    is granted the relief they request.  Plaintiff and Defendants have an actual controversy and

16    opposing legal positions as to Defendants' violations of the laws of the United States and the

17    State of California. The need for relief is critical because the rights at issue are paramount under

18    the laws of the United States and the State of California.

19    WHEREFORE, Plaintiff DOUGLAS WINSTON prays for judgment and the following

20    specific relief against Defendants:

21    1.    Award to Plaintiff all appropriate damages, including, but not limited to, statutory

22    damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all

23    according to proof;

24    2.    Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and

25    costs of this proceeding as provided by law;

26    3.    Award prejudgment interest under Civil Code section 3291; and

27    4.    Grant any other relief that this Court may deem just and proper.

28    //

Date: April 2, 2024                                        REIN & CLEFTON
                                                           ALL ACCESS LAW GROUP


                                                           ___/s/ Aaron Clefton___
                                                           By AARON CLEFTON, Esq.
                                                           Attorney for Plaintiff
                                                           DOUGLAS WINSTONP

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.


Date: April 2, 2024                                        REIN & CLEFTON
                                                           ALL ACCESS LAW GROUP


                                                           ___/s/ Aaron Clefton___
                                                           By AARON CLEFTON, Esq.
                                                           Attorney for Plaintiff
                                                           DOUGLAS WINSTON

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES